UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATTON BOGGS LLP,<br><br>         Plaintiff,<br><br>    v.<br><br>CHEVRON CORPORATION,<br><br>         Defendant. | Civil Action No. 2:12-cv-00901-ES-CLW |

_____

**PLAINTIFF PATTON BOGGS'S OBJECTIONS TO MAGISTRATE JUDGE
WALDOR'S JULY 18, 2012 REPORT AND RECOMMENDATION**
_____

James E. Tyrrell, Jr.

PATTON BOGGS, LLP
The Legal Center
One Riverfront Plaza, 6th Fl.
Newark, New Jersey 07102
Telephone: (973) 848-5600
Facsimile: (973) 848-5601
E-mail: jtyrrell@pattonboggs.com

*Appearing Pro Se*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 2

      I.      Chevron Hamstrings Patton Boggs's Business Activities with Unlawful Restraints ................................................................................................................... 2

      II.     Chevron Helps Itself to Venue in the S.D.N.Y. ..................................................... 4

STANDARD OF REVIEW ..................................................................................................... 6

ARGUMENT ........................................................................................................................... 6

      I.      The Recommendation Ignores the Fact that the Transferee Court Has Already Ruled Against Patton Boggs *In Absentia* .............................................. 6

      II.     There is No Risk of Duplicative Litigation Sufficient to Warrant Transfer ..................................................................................................................... 8

      III.    The S.D.N.Y. Has No Particular Familiarity with the Facts or Legal Questions of this Lawsuit ................................................................................... 10

CONCLUSION ..................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Betts v. Atwood Equity Coop. Exchange, Inc.*,
  1990 U.S. Dist. LEXIS 8132 (D. Kan. June 13, 1990) ............................................................. 10

*Chevron Corp. v. Donziger*,
  768 F.Supp.2d 581 (S.D.N.Y. 2011) ................................................................... 3, 5, 9, 10

*Chevron Corp. v. Donziger*,
  11Civ.0691 (LAK), Dkt. 550 ................................................................................................. 10

*Chevron Corp. v. Naranjo*,
  11-1150 (L), 11-1264(Con), Dkt, 135 (May 12, 2011) ............................................................. 3

*Chevron Corp. v. Naranjo*,
  667 F.3d 232 (2d Cir. 2012) ......................................................................................... 2, 8, 10

*Chevron Corp. v. Naranjo*,
  Case Nos. 11-1150-cv(L), 11-1264-cv(con), 11-2259-op(con), 2011 WL 4375022 (2d Cir. Sept. 19, 2011) ......................................................................................... 4

*Chevron Corp. v. Salazar, et al.*,
  No. 11-cv-03718-LAK (S.D.N.Y.) ............................................................................................ 3

*Chevron Corp. v. The Weinberg Group*,
  682 F. 3d 96 (D.C. Cir. 2012) ................................................................................................. 10

*ETC Int'l, Inc. v. Curriculum Advantage, Inc.*,
  2006 WL 1645030 (D.N.J. June 14, 2006) ............................................................................... 6

*Frato v. Swing Staging, Inc.*,
  2001 WL 3625064 (D.N.J. 2011) (Salas, J.) ........................................................................... 11

*Glickenhaus v. Lytton Financial Corp.*,
  205 F. Supp. 102 (D. Del. 1962) ............................................................................................ 2, 7

*Lawrence v. Xerox Corp.*,
  56 F.Supp.2d 442 (D.N.J. 1999) ............................................................................................ 2, 7

*Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett*,
  847 F. Supp. 1244 (D.N.J. 1994) .............................................................................................. 7

*On-Time Staffing, LLC v. Flexible Staffing Solutions, Inc.*,
  2007 WL 1234978 (D.N.J. 2007) ............................................................................................ 11

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1998) ...........................................................................................................6, 8

*West Africa Trading & Shipping Co. v. London Int'l Group*,
    968 F. Supp. 996 (D.N.J. 1997) ...........................................................................................6

**RULES**

L. Civ. R. 72.1(a)(2) ......................................................................................................................6

L. Civ. R. 72.1(c)(2) ......................................................................................................................6

Fed. R. Civ. P. 72 ...........................................................................................................................6

**STATUTES**

28 U.S.C. § 636(b)(1) ....................................................................................................................6

28 U.S.C. § 1352 .......................................................................................................................7, 11

28 U.S.C. § 1404 .................................................................................................................. passim

## PRELIMINARY STATEMENT

Judge Waldor's Report and Recommendation ("Recommendation") is as notable for what it omits as for the analyses it contains. Nowhere in the Recommendation is there any effort to address the ramifications of Chevron Corporation's ("Chevron") attempts to wrest jurisdiction from this Court before it could determine its own jurisdiction. As the Court is aware, and as will be recounted more fully herein, Chevron filed in the United States District Court for the Southern District of New York ("S.D.N.Y.") an application for an Order to Show Cause seeking to exonerate the $21.8 million injunction bond ("Exoneration Application") on the very same day that it filed the instant motion before this Court to transfer this case to Judge Kaplan in the S.D.N.Y., or in the alternative, dismiss the action ("Motion to Transfer").

Under more typical circumstances, Chevron's jurisdictional shenanigans, followed by an Order similar to that recommended by Magistrate Judge Waldor, might have little consequence: Patton Boggs's lawsuit would simply be transferred to and proceed in the same jurisdiction to which Chevron had helped itself. However, as this Court has recognized, the litigation related to this lawsuit is anything but typical. Declaring that Patton Boggs "must live with the consequences of [its] tactical decision" to file suit in New Jersey instead of proceeding before the S.D.N.Y., that court has already held that no one—Patton Boggs included—could "properly" have "submitted to this court any claim for damages against the bond." (Dkt. 17-2 ("Exoneration Order"), at 5.) The S.D.N.Y. also went further, ruling on claims for attorney's fees then advanced only by Patton Boggs and only before this Court. "Attorney's fees are not recoverable on a preliminary injunction bond," the S.D.N.Y. ruled. (*Id.* at 5.) Indeed, that court has now already ruled—in Patton Boggs's absence—that any liability under a bond "is limited by the terms of the bond or the order of the court that required the posting." (*Id.* at 8.) And here, the S.D.N.Y. has ruled, that liability is non-existent. (*Id.* at 5.)

Against this backdrop, it is insufficient for the Recommendation to have focused so greatly on the commonplace factors of a 28 U.S.C. § 1404 analysis, to the exclusion of any analysis regarding the impact of Chevron's jurisdictional maneuverings. We can all agree that Newark is not so far from Manhattan so as to present an appreciable burden to witnesses or administrative difficulties. We can all even agree that Judge Kaplan of the S.D.N.Y. has greater familiarity with the preliminary injunction decision he penned than does this Court—although the content of that decision is nearly irrelevant to Patton Boggs's claims. But all of those considerations pale in comparison to the great injustice that will be worked upon Patton Boggs should this case be transferred to a jurisdiction that could not even wait a few months for this Court to decide a transfer motion before rejecting Patton Boggs's claims. Indeed, the "interests of justice" inquiry that § 1404 requires does not allow for the Magistrate Judge to leave so gaping a hole in the Recommendation. *See Lawrence v. Xerox Corp.,* 56 F.Supp.2d 442, 453 (D.N.J. 1999); *Glickenhaus v. Lytton Financial Corp.,* 205 F. Supp. 102, 105 (D. Del. 1962). Although there are other analytical errors in the Recommendation that are described below, this alone is reason enough for the Court to deny Chevron's motion to transfer. Simply, put, transfer of this action to a judge who has already ruled against Patton Boggs *in absentia* is a fundamental denial of due process

## BACKGROUND

I.  **Chevron Hamstrings Patton Boggs's Business Activities with Unlawful Restraints**

On February 1, 2011, Chevron filed a complaint against the Afectados[1] and their affiliates in the S.D.N.Y., alleging that persons contributing to the Afectados' cause are liable

---

[1] As used herein, "Afectados" refers to Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje. In the interest of judicial economy, Patton Boggs will not here recount the lengthy history of the wider international litigations associated with this lawsuit. Should the Court wish to review this history, Patton Boggs respectfully refers the Court to *Chevron Corp v. Naranjo*, 667 F.3d 232, 234–37 (2d Cir. 2012).

under the RICO Act for trying to "extort" Chevron through litigation, lobbying, and public relations efforts (the "RICO Action"). (Dkts. 21-21, 21-22.) The 155-page, nine-count Complaint, which names Patton Boggs as a "non-party co-conspirator"—but not a party— asserted numerous federal and state law causes of action against more than 50 defendants, including the Afectados and certain of their counsel. Count 9 demanded an unprecedented preemptive declaration that any judgment from the Ecuadorian courts would be unenforceable anywhere in the world.[2]

In connection with Count 9,[3] Chevron sought a temporary restraining order and one was granted on February 9, 2011. (Dkt. 9-1.) One day after Judge Kaplan entered these temporary restraints, Chevron's counsel emailed a letter to attorneys in Patton Boggs's Newark, New Jersey office, stating that Chevron considered Patton Boggs to be "on actual notice of, and bound by" the temporary restraining order. (Dkt. 9-2.) On March 7, 2011, Chevron persuaded the S.D.N.Y. to enter a preliminary injunction with respect to Count 9 of Chevron's RICO Complaint. Chevron's counsel again emailed a letter to attorneys in Patton Boggs's Newark office, stating that Chevron considered Patton Boggs to be "on actual notice of, and bound by" the injunction.

The unlawful restraints prohibited the Afectados and their counsel, including Patton Boggs, from taking any action anywhere in the world to enforce the Ecuadorian Judgment. *Chevron Corp. v. Donziger*, 768 F.Supp.2d 581 (S.D.N.Y. 2011). Indeed, until narrowed by the United States Court of Appeals for the Second Circuit ("Second Circuit") on May 12, 2011 the injunction appeared so broad as to prevent Patton Boggs from even giving legal advice to the Afectados. *Chevron Corp. v. Naranjo*, 11-1150 (L), 11-1264(Con), Dkt, 135 (May 12, 2011).

---

[2] On February 14, 2011, the Ecuadorian court issued a 188-page judgment finding Chevron liable for billions of dollars in damages. (Dkt. 21-27.) On January 3, 2012, an intermediate appellate panel affirmed the judgment. (Dkt. 21-28.) Chevron's petition to Ecuador's National Court of Justice is pending.

[3] The S.D.N.Y. later severed this Count into a separate action. *Chevron Corp. v. Salazar, et al.*, No. 11-cv-03718-LAK (S.D.N.Y.).

As a precondition to granting Chevron's motion for a preliminary injunction on Count 9, the S.D.N.Y. required Chevron to post a $21.8 million bond. (Dkt. 9-5.)

The Afectados thereafter appealed the grant of the injunction to the Second Circuit. On September 19, 2011, only one business day after argument, the Second Circuit vacated the preliminary injunction in its entirety. *See Chevron Corp. v. Naranjo*, Case Nos. 11-1150-cv(L), 11-1264-cv(con), 11-2259-op(con), 2011 WL 4375022, at *1 (2d Cir. Sept. 19, 2011). The Second Circuit issued its full opinion vacating the injunction and dismissing Count 9 on January 26, 2012.

## II.   Chevron Helps Itself to Venue in the S.D.N.Y.

On February 15, 2012, Patton Boggs brought the instant action against Chevron to recover on the bond for the damages it suffered as a result of the preliminary injunction. The action was filed in the district court in the city in which Patton Boggs performs virtually all of its work on behalf of the Afectados: Newark, New Jersey. Patton Boggs alleges that it suffered a substantial loss of earnings and other damages as a result of the unlawful restraint of its work on behalf of the Afectados.

Before Patton Boggs commenced this action, no party had taken any action in any court to adjudicate Chevron's liability on the injunction bond. Indeed, Chevron did nothing with respect to the bond until March 13, 2012, when it simultaneously filed the Motion to Transfer and Exoneration Application. In connection with its Exoneration Application, Chevron asked Judge Kaplan to immediately absolve it of any liability relating to the bond. (Dkt. 10-4, at 22.) And tellingly, Chevron sought to accelerate resolution of the Exoneration Application, while delaying progress in this action. Before the S.D.N.Y., Chevron attempted to pursue relief by way of an order to show cause, based on a purported urgent need to resolve the bond issue. (Dkt. 10-4, at 5-6.) Yet, before this Court, Chevron attempted to delay service of the Complaint (Dkt.

5, at 2), sought an extension of time to answer the Complaint (Dkt. 4), and then sought transfer on an ordinary motion schedule.

In response to Chevron's attempt to wrest jurisdiction from this district and help itself to its preferred forum in the S.D.N.Y., Patton Boggs filed an "Application for an Order to Show Cause Why Chevron Should Not Be Enjoined, Pursuant to the First-filed Rule, From Taking Any Steps Toward 'Exonerating' the Injunction Bond at Issue in the District of New Jersey Proceedings" on March 29, 2012.  When this Court set an expedited briefing schedule on this application, with briefing to close on April 3, 2012, Chevron countered by: (1) informing Judge Kaplan of that end-date by letter;[4] and then (2) submitting its reply brief in support of its Exoneration Application—also due on April 3—one day early, on April 2.  (See Dkt. 17-01.) Judge Kaplan by written opinion discharged the bond only minutes after Chevron submitted its early reply brief.  (*See* Exoneration Order.)  The S.D.N.Y ruled against Patton Boggs *in absentia*, holding that "no party may recover on the bond" and that Patton Boggs—even though it has never been a party to the S.D.N.Y. proceedings—must "live with the consequences" of not having appeared in New York to contest the Exoneration Application.  (*See* Exoneration Order, at 6).  In light of the S.D.N.Y.'s ruling, Patton Boggs was forced to take the uncommon step of appealing as a non-party bound, or with an interest plausibly affected, by the judgment.  That appeal, which seeks to vacate Judge Kaplan's "Exoneration Order" on the bases that it was premature and contrary to law, remains pending in the Second Circuit. *Chevron v. Donziger*, 12-1959 (L), 12-1960(Con).

Given the uncommon speed with which Judge Kaplan exonerated the bond, this Court never had an opportunity to rule on Patton Boggs's request for an injunction based on the first-

---

[4] (*See* Dkt. 21-02.)

filed rule. Instead, this Court dismissed the application because it was purportedly rendered moot by the relief Chevron improperly orchestrated for itself in the S.D.N.Y. (Dkt. 20.) The Court also did not have an opportunity to rule on Chevron's Transfer Motion before Judge Kaplan exonerated the bond—purportedly deciding Patton Boggs's entitlement to damages *in absentia*. Three months after Judge Kaplan exonerated the bond, on July 18, 2012, Magistrate Judge Waldor issued the Recommendation urging that Chevron's motion to transfer be granted under 28 U.S.C. § 1404(a). (*See* Recommendation, at Dkt. 38.)

## STANDARD OF REVIEW

In accordance with Local Federal Rule of Civil Procedural 72.1, Patton Boggs respectfully submits its objections to the Recommendation, which was issued "pursuant to 28 U.S.C. § 636(b)(1)(b)."[5] Courts review *de novo* those portions of a Report and Recommendation to which objections are made.[6] The district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate."[7] The district court may also receive further evidence, recall witnesses, or remand the matter back to the Magistrate Judge with directives. *See West Africa Trading*, 968 F. Supp. at 998.

## ARGUMENT

**I.     The Recommendation Ignores the Fact that the Transferee Court Has Already Ruled Against Patton Boggs *In Absentia***

Section 1404(a) vests a district court with discretion "to adjudicate motions to transfer according to an *individualized*, case by case consideration of convenience and fairness." *Stewart*

---

[5] *See* Recommendation, at 1; L. Civ. R. 72.1(c)(2) ("Any party may object to the Magistrate Judge's proposed findings, recommendations or report issued under this Rule within 14 days after being served with a copy thereof.").

[6] *West Africa Trading & Shipping Co. v. London Int'l Group*, 968 F. Supp. 996, 998 (D.N.J. 1997); *see also ETC Int'l, Inc. v. Curriculum Advantage, Inc.*, 2006 WL 1645030, *3 (D.N.J. June 14, 2006).

[7] *ETC Int'l*, 2006 WL 1645030, at *2; *see also West Africa Trading*, 968 F. Supp. at 998; *see generally*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2).

*Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1998) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (emphasis added)).  These "interests of justice" are one of the most significant criteria in determining the advisability of transfer.  *Lawrence,* 56 F.Supp.2d at 453; *Glickenhaus,* 205 F. Supp. at 105.  In this regard, the Magistrate Judge ignored the elephant in the room: that because of Chevron's gamesmanship and judicial forum-shopping, Judge Kaplan already has purported to deny Patton Boggs, *in absentia*, any right of recovery stemming from the issuance of the unlawful restraints.  (*See generally*, Recommendation.)   This, despite the S.D.N.Y.'s acknowledgment that this Court possessed jurisdiction over those claims pursuant to § 1352.  (Exoneration Order, at 7 n.21.)  Transferring this case to the S.D.N.Y. under these circumstances could sound the death knell for Patton Boggs's claims and in a manner that goes against all tenets of fairness and justice.  *See Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett*, 847 F. Supp. 1244, 1246 (D.N.J. 1994) (holding that the interests of justice weigh in favor of transfer "only when one of the parties exhibits a lack of ability to attend the proceedings in the chosen forum" or would be "unable to properly defend itself if the case is litigated in the District of New Jersey").

The Magistrate Judge's § 1404 analysis conspicuously skirts this issue, focusing instead on points such as those stemming from the proximity of Manhattan to Newark and the misperception (discussed further, *infra*) that the S.D.N.Y. possesses greater familiarity with the claims in this lawsuit than this Court. (Recommendation, at 6-7; *see also infra* Sections II-III.) It strains logic for the Magistrate Judge to have placed such emphasis on administrative difficulties, practical considerations, and inconvenience to unnamed witnesses when Patton Boggs's claims might simply disappear the moment the transfer order is signed.  If such a scenario does not "pose[ ] administrative difficulties or serious practical considerations," then

nothing does.  (Recommendation, at 15).  The Recommendation is thus a far cry from being properly tailored to the "individualized circumstances" of this case and would run roughshod over Patton Boggs's right to have fairness permeate the § 1404(a) jurisdictional analysis. *Stewart Organization*, 487 U.S. at 23 (citation omitted).  On this basis alone, this Court should reject the Recommendation and deny Chevron's motion to transfer.  At a minimum, the Court should remand the Recommendation with directives that the Magistrate Judge consider this issue as part of the § 1404 analysis.[8]

## II.     There is No Risk of Duplicative Litigation Sufficient to Warrant Transfer

The Magistrate Judge found that transfer was appropriate because "it is in the interest of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals."  (Recommendation, at 13-14 (citing *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. 1996) (quoting *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993) (emphasis added)).)  Although Judge Kaplan resolved Patton Boggs's rights to damages under the bond *in absentia,* the fact is that Patton Boggs is not and has never been a party to the S.D.N.Y. action.[9]  Even Chevron has conceded that Patton Boggs is not a party to that action, claiming that Patton Boggs went out of its way to avoid appearing there.  (Dkt. 7-1, at 18-19.)  There would thus be no duplication of parties should this Court retain jurisdiction over this matter. [10]

---

[8] In the event the Court remands the Recommendation, Patton Boggs reserves the right to object to that renewed § 1404 analysis based on any and all appropriate grounds.

[9] "The law firm that sued in New Jersey could have done so as well, at least subject to the availability of a right or leave to intervene.  But for reasons sufficient unto themselves, they elected not to do so.  They must live with the consequences of their tactical decision to forego that opportunity."  (Exoneration Order, at 6.)

[10] In this regard, the Recommendation contains a troubling inaccuracy, noting that "the parties have been litigating various incarnations of this matter in the Southern District of New York for over 19 years.  At no point has either party contested the appropriateness of that forum."  (Recommendation, at 7.)  To the contrary, *everyone* involved in this litigation has sought to contest the jurisdiction of the S.D.N.Y. at one time or another – including Chevron.  For a more complete picture of this issue, the Court is respectfully referred to *Naranjo*, 667 F.3d at 234–37.  Patton

Likewise, there would be minimal, if any, duplication of issues. The RICO Action is Chevron's attempt to prove that a 19-year international environmental and human rights case against it is a fraud. (*See generally*, Dkts. 21-21; 21-22.) Chevron seeks damages in the form of "attorneys' fees it has incurred to defend against the [] Lago Agrio suit." (Dkt. 21-30, at 12-17.) In contrast, the issues before this court are: (i) whether Patton Boggs is entitled to recover money damages resulting from a temporary restraining order and preliminary injunction that prohibited the firm from serving its clients and conducting its business; (ii) whether the firm is entitled to collect attorney's fees resulting from the unlawful restraints; and (iii) whether the firm can prove damages resulting from Chevron's malicious motives in seeking the injunction. None of these issues overlaps with the RICO Action.

Chevron claims that Patton Boggs's "broader 'malicious prosecution' claim [] overlaps considerably with the issues before Judge Kaplan, making transfer particularly appropriate here." (Dkt. 7-2, at 22, n.4.) Similarly, Chevron accuses Patton Boggs of trying to "relitigate issues rejected by Judge Kaplan in the context of the [Afectados'] 'unclean hands' defense." (Dkt. 16, at 30.) Setting aside for a moment the fact that none of the "unclean hands" evidence presented to Judge Kaplan has anything to do with Chevron's motivations in seeking an injunction, the even greater flaw in Chevron's reasoning is that Judge Kaplan never considered *any* misconduct on the part of Chevron. The Afectados submitted evidence of Chevron's "unclean hands" prior to entry of the injunction, but Judge Kaplan deemed the evidence untimely and refused to consider it. *See Donzinger*, 768 F. Supp. 2d at 656; (*see also* Dkt. 21-31). This Court cannot "relitigate" that which was never litigated.[11]

---

Boggs was not a party to any of these actions and has disputed any rulings issued by Judge Kaplan that purport to affect its rights *in absentia*.

[11] Furthermore, as the Court is aware, Patton Boggs would seek to sever the claim for malicious prosecution in order to permit the Court and the parties to focus on the less fact-intensive causes of action first. (*See* Dkt. 27-09.)

- 9 -

Any duplication between the two cases has only recently arisen as a result of Chevron's orchestrated scheme to convince Judge Kaplan to exonerate the bond and rule on Patton Boggs's rights *in absentia*. Chevron should not be able to benefit from its own gamesmanship. *See Betts v. Atwood Equity Coop. Exchange, Inc.*, 1990 U.S. Dist. LEXIS 8132 (D. Kan. June 13, 1990) (holding that movant's efforts to seek a different judge is not "a valid legal reason for a change of venue. The purpose of § 1404(a) is not to allow judge-shopping by litigants.") (internal citations omitted).

### III. The S.D.N.Y. Has No Particular Familiarity with the Facts or Legal Questions of this Lawsuit

Judge Kaplan does possess an undeniable familiarity with the preliminary injunction decision he himself drafted, but the content of that decision is largely irrelevant to this lawsuit. *See* Section II, *supra*.[12] The Second Circuit has already ruled that the preliminary injunction was unlawful and vacated Judge Kaplan's decision in its entirety. *Chevron v. Naranjo*, 667 F. 3d 232 (2d Cir. 2012).[13] The only factual inquiry before this Court is the extent to which Patton Boggs was economically damaged by the injunction, a subject area with which this Court is as familiar, if not more so, than the S.D.N.Y. Judge Kaplan has never heard evidence about the damages Patton Boggs suffered as a result of the wrongful injunction. And apart from the *in absentia* ruling discussed earlier, Judge Kaplan has never considered the legal bases for Patton Boggs's claims. This Court at least has the benefit of Patton Boggs's pleadings and subsequent Joint Proposed Discovery Plan submission, in which Patton Boggs presented the bases for the

---

If the claim is severed and Patton Boggs prevails on one or more of its remaining causes of action, then this Court would likely never consider the claim for malicious prosecution. *Id.*

[12] On July 31, 2012, the S.D.N.Y. issued an Opinion on Partial Summary Judgment Motion in the RICO Action that reexamines, in a different context, many of the same purported facts that were at issue in the now-vacated preliminary-injunction decision. *Chevron Corp. v. Donziger*, 11Civ.0691 (LAK), Dkt. 550. For this reason, the Opinion is no more relevant to the instant lawsuit than the preliminary injunction decision.

[13] Other Circuits have found the Second Circuit's vacatur to render the preliminary-injunction decision unfit to justify even a single discovery ruling, to say nothing of the wholesale transfer of a case. *Chevron Corp. v. The Weinberg Group*, 682 F. 3d 96 (D.C. Cir. 2012).

recovery it seeks. (Dkt. 27-09.) Indeed, even where such an inquiry might require the interpretation of New York law, not even that warrants transfer to the S.D.N.Y. *Frato v. Swing Staging, Inc.*, 2001 WL 3625064, at *6 (D.N.J. 2011) (Salas, J.) ("The proximity among New York and New Jersey inevitably leads to a multitude of diversity actions in which the Court is required to apply New York substantive law."); *see also On-Time Staffing, LLC v. Flexible Staffing Solutions, Inc.*, 2007 WL 1234978, at *7 (D.N.J. 2007) (declining to transfer a case from New Jersey to the Middle District of Pennsylvania, even though the Defendant was located in Pennsylvania and the alleged misconduct occurred in Pennsylvania because the plaintiff's forum choice was entitled to deference and a New Jersey court was just as capable of applying Pennsylvania law as a the Middle District of Pennsylvania). This Court is able—and authorized under § 1352—to adjudicate whether Patton Boggs has shown damages stemming from the unlawful injunction. The Court, respectfully, should do so.

## CONCLUSION

For the foregoing reasons, Patton Boggs respectfully submits that the Recommendation be vacated in its entirety, and that Chevron's motion to transfer be denied.

Dated: Newark, New Jersey
        August 1, 2012

By:    s/ James E. Tyrrell, Jr.
       James E. Tyrrell, Jr.

PATTON BOGGS, LLP
The Legal Center
One Riverfront Plaza, 6th Fl.
Newark, New Jersey 07102
Telephone: (973) 848-5600
Facsimile: (973) 848-5601
E-mail: jtyrrell@pattonboggs.com

*Appearing Pro Se*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2012, I caused Plaintiff Patton Boggs's Objections to Magistrate Judge Waldor's July 18, 2012 Report and Recommendation to be electronically filed with the Clerk of the Court using the CM/ECF system which, pursuant to Local Rule 5.2, is deemed service for purposes of Fed. R. Civ. P. 5.

I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed on August 1, 2012                              *s/ James E. Tyrrell, Jr.*
                                                                 James E. Tyrrell, Jr.